UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 3:23-cv-00025-GNS-LLK

**SAZERAC COMPANY, INC.,**  PLAINTIFF/COUNTER-DEFENDANT

v.

**REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC,**  DEFENDANT/COUNTER-CLAIMANT

## MEMORANDUM OPINION AND ORDER

This matter has been referred to Magistrate Judge Lanny King to hear and determine all pretrial matters, including non-dispositive motions. Text order of May 14, 2024, [DN 85]. Before the Court are a litany of motions to seal exhibits to contemporaneously filed briefing on discovery disputes. *See* [DN 98, 100, 106, 107, 111, 114, 117, 120, 124, 125]. These motions provide good cause to seal the exhibits, and the sealing is narrowly tailored to serve that cause. Accordingly, the Court GRANTS Sazerac Company, Inc.'s ("Sazerac") Motion for Leave to Seal Exhibits to Motion to Compel, [DN 98], Republic National Distributing Company, LLC's ("RNDC") Motion for Leave to Seal Second Motion to Compel, [DN 100], Sazerac's Motion for Leave to Seal Exhibits to RNDC's Second Motion to Compel, [DN 106], RNDC's Motion for Leave to Seal Exhibits to Sazerac's Motion to Compel, [DN 107], Sazerac's Motion for Leave to Seal Exhibits to its Response, [DN 111], RNDC's Motion for Leave to Seal Exhibits to its Response, [DN 114], Sazerac's Motion for Leave to Seal Exhibits to its Reply, [DN 117], RNDC's Motion for Leave to Seal Exhibits to its Reply, [DN 120], and Sazerac's Motion for Leave to Seal Documents in RNDC's Response, [DN 124]. The Court GRANTS IN PART AND DENIES IN PART RNDC's Motion for Leave to Seal Documents in Sazerac's Response, [DN 125]. Because these motions also indicate some documents have been submitted which were

otherwise marked as confidential by non-parties, the Court shall order Plaintiff and Defendant to serve those non-parties with this Order and grant twenty-one (21) days for those parties to file an appropriate motion to seal their documents.

Legal standard

Trial courts have the authority to seal their records under certain circumstances. *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983). While "courts have long recognized . . . a 'strong presumption in favor of openness' as to court records, *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)), "the presumptive right of the public to inspect and copy judicial documents and files" may be overcome where the "interests of privacy outweigh the public's right to know." *In re Knoxville News-Sentinel*, 723 F.2d at 474. Thus, documents that reveal sensitive information may properly be subject to sealing. *See Shane Grp.*, 825 F.3d at 307–08.

To maintain files under seal, a party "must provide compelling reasons to seal the documents and demonstrate that the sealing is narrowly tailored to those reasons." *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202, 207 (6th Cir. 2016) (citing *Shane Grp.*, 825 F.3d 299, 305 (6th Cir. 2016)). The moving party may satisfy its burden on a motion to seal filings by "showing that 'disclosure will work a clearly defined and serious injury.'" *Shane Grp.*, 825 F.3d at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). The moving party must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp.*, 825 F.3d at 305-06 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). Identification that documents are "legitimate trade secret[s]"

is "typically enough to overcome the presumption of access" and justify a permanent sealing of the document in the record. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also AK Steel Corp. v. Colton*, No. 01-74279, 2001 WL 1636957, at *4 (E.D. Mich. Dec. 3, 2001) ("The Court finds that the pricing strategy for Ford . . . [is a] protectable trade secret under the Uniform Trade Secrets Act."). This Court has also previously recognized that revealing contractual terms with third parties would undermine a company's bargaining power if its competitors learned of these terms. *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-cv-354-DJH-CHL, 2019 WL 4452956, at *3 (W.D. Ky. Sept. 17, 2019) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Joint Local Rule of Civil Practice 5.7(c) requires parties to seek the Court's leave to file motions under seal absent a standing order of this Court. LR 5.7(c). "Reference to a stipulation that allows a party to designate certain documents as confidential is not sufficient grounds to establish that a document, or portions thereof, warrants filing under seal." *Id.*

Sazerac's Motion for Leave to Provisionally Seal Exhibits to Motion to Compel [DN 98]

Sazerac moves to provisionally seal Exhibits 1–2, 7–9, 13–14, and 16–17 to its Motion to Compel, [DN 97]. [DN 98] at *1. These documents had been marked as "Confidential" or "Attorneys' Eyes Only" pursuant to a confidentiality agreement between the parties. [DN 98] at *2. However, Sazerac "takes no position on whether the Court should permanently seal the exhibits," only filing the motion under its obligations pursuant to the parties' confidentiality agreement. [DN 98] at *3. Accordingly, the Court shall GRANT Sazerac's Motion for provisional sealing pursuant to Local Rule 5.7.

RNDC's Motion for Leave to Seal Exhibits to its Second Motion to Compel [DN 100]

Likewise, RNDC moves to provisionally seal Exhibits 8, 10–16, 22–25, and 28 to its Second Motion to Compel, [DN 99]. [DN 100] at *1. These documents had been produced to RNDC and marked as "Confidential" or "Highly Confidential – Attorney's Eyes Only" pursuant to a private confidentiality agreement. [DN 100] at *3. The producing party for Exhibits 8 and 11–16 is Plaintiff Sazerac. [DN 100] at *3–4. The producing party for Exhibit 24 is Kentucky Eagle, Inc. [DN 100] at *4. The producing party for Exhibits 22, 23, and 25 is Reyes Holdings, LLC. [DN 100] at *4. The producing party for Exhibit 28 is Deloitte Consulting LLP. While unspecified in RNDC's motion, Exhibit 10 is a deposition of Sazerac's corporate representative. [DN 99-10]. RNDC submits this motion pursuant to their private confidentiality agreement, and does not argue for the permanent sealing of these documents. [DN 100]. Accordingly, the Court shall GRANT RNDC's Motion for provisional sealing, [DN 100], pursuant to Local Rule 5.7. Because several of these documents have been marked as confidential by non-parties to the matter, the Court shall also order RNDC to serve upon those parties a copy of this Order and grant them leave to file an intervening motion to seal those documents.

Sazerac's Motion for Leave to Seal Exhibits to RNDC's Second Motion to Compel [DN 106]

Sazerac moves to seal Exhibits 11–16 and 28 to RNDC's Second Motion to Compel. [DN 106] at *1.

Exhibit 11 is "a detailed internal, Sazerac PowerPoint" which "contains numerous pages reflecting confidential assessments, risks, and issues" including "confidential strategic decisions and business strategies, as well as internal business structures unknown to the public." [DN 106]

at *3. Sazerac argues that disclosure may lead to "unfair competition and competitive harm" to itself or third parties. [DN 106] at *3.

Exhibits 12 and 15 are "email chains discussing Sazerac's business and strategic decisions" with RNDC's competitors, containing "confidential information regarding Sazerac's pricing strategies, sales discussions/strategies, [etc.] which are unknown to the public." [DN 106] at *4. Sazerac argues that disclosure of these documents "may lead to unfair competition and competitive harm" to itself, and disclosure to RNDC would cause "additional competitive harm." [DN 106] at *4. Some of this information is not publicly available, [DN 106] at *4, and is "tangential to the legal and factual issues involved in this case."

Exhibits 13, 14, and 16 are email chains "contain[ing] detailed and extensive confidential discussions regarding Sazerac's pricing strategies, sales discussions/strategies, [etc.] all of which are unknown to the public." [DN 106] at *4–5. Sazerac argues that it owes a duty of confidentiality to third parties who would be harmed by these exhibits being disclosed. [DN 106] at *5. Sazerac further notes that disclosure may lead to unfair competition and competitive harm to its interests. [DN 106].

Exhibit 28 is a Statement of Work which "reflects confidential strategic and business information regarding" services provided by a third party "including pricing information." [DN 106] at *5. This information is not publicly known, and is tangential to the legal and factual issues involved in the case. [DN 106] at *5.

Sazerac has shown good cause to seal each of the above Exhibits, and that the interests of privacy outweigh the public's right to information. Sazerac's request is narrowly tailored, as it seeks to seal Exhibits rather than entire motions and the information relevant to the Court's decision will be contained in the Motions and subsequent Order. Accordingly, the Court

GRANTS Sazerac's Motion for Leave to Seal Exhibits to RNDC's Second Motion to Compel, [DN 106].

Sazerac does not move to seal Exhibit 10. [DN 106]. Because they are the "producing party" and no other party would have an interest in sealing that document, the Court finds no good cause to continue sealing Exhibit 10 to RNDC's Second Motion to Compel.

RNDC's Motion for Leave to Seal Exhibits to Sazerac's Motion to Compel [DN 107]

RNDC moves to seal Exhibits 1, 2, 7, 8, 9, 13, 14, 16, and 17 to Sazerac's Motion to Compel, [DN 97]. [DN 107] at *1.

Exhibit 1 is "a list of RNDC's redacted documents' titles/subjects." [DN 107] at *3. RNDC argues that disclosure of this exhibit would reveal "information about RNDC's strategy, other suppliers' information, timing and types of financial analyses conduction, and confidential project names of business initiatives." [DN 107] at *3. Publication of this information may result in a competitive disadvantage to RNDC, and RNDC states the public has minimal interest in these titles. [DN 107] at *4.

Exhibit 2 is "a letter from RNDC to Sazerac discussing terms and financials" of its distribution agreement. [DN 107] at *4. The letter references "pricing data, competitive business information . . . and go-forward proposals" which is "non-public" and "could be leveraged by Sazerac's and RNDC's competitors in future contract negotiations to the harm of Sazerac and RNDC." RNDC argues that disclosure could result in "serious financial, competitive, and reputational harm." [DN 107] at *4.

Exhibit 7 is "an email chain" which includes discussions of "various brand sales[,]" "specific brand sales amounts and profits, and [] sensitive competitive information[.]" RNDC

argues that its competitors "could use this information to undercut [its] business model[.]" [DN 107] at *5. RNDC also notes that the documents contain "non-public contact information for RNDC employees, in some instances including individuals' cell phone numbers." [DN 107] at *5.

Exhibit 8 is excerpts from the deposition of RNDC's VP of Supplier Business Development. [DN 107] at *5. This deposition includes discussion of "sensitive competitive information regarding sales of product and volume sales changes in various states." [DN 107] at *5. RNDC argues that this information addresses "confidential strategies for protecting its business interests" and that disclosure of this non-public information would harm RNDC and third parties. [DN 107] at *5.

Exhibit 9 is an excerpt from the deposition of RNDC's SVP of National and Strategic Accounts. [DN 107] at *6. This deposition discusses "aspects of RNDC's business dealings with other suppliers and customers and RNDC's confidential strategy following Sazerac's termination of RNDC[,]" and "RNDC's [non-public] internal processes and procedures[.]" [DN 107] at *6. RNDC argues that disclosure would "give other industry participants, including RNDC's competitors, an advantage in the marketplace by giving them proprietary information about RNDC's business operations." [DN 107] at *6.

Exhibit 13 is an excerpt from the deposition of RNDC's SVP of Commercial Finance and Productivity. [DN 107] at *6. The deposition discusses "RNDC's business and marketing strategies," as well as "promotional activities of various suppliers' products" and "RNDC's sensitive financial information." [DN 107] at *6. RNDC argues that "[c]ompetitors could use this information to undercut RNDC's business strategy, its pricing, and its relationships with other industry participants." [DN 107] at *6.

Exhibit 14 is an email chain between RNDC and Sazerac's counsel with attachments including "individuals from RNDC's management and sales team discussing RNDC's business and marketing strategies and RNDC's relationships with other industry participants[.]" [DN 107] at *7. RNDC argues that "if non-public details" in this chain were published, it would "face competitive harm[.]" [DN 107] at*7. RNDC also notes that the document contains "non-public contact information for RNDC employees." [DN 107] at *7.

Exhibit 16 is an email chain including "individuals from RNDC's sales team discussing RNDC's marketing strategy." [DN 107] at *7. RNDC argues that publishing this information "would give other wholesales a competitive advantage" over it. [DN 107] at *7. RNDC also notes that the document contains non-public contact information for RNDC employees. [DN 107] at *7.

Exhibit 17 is an email chain regarding RNDC's "supplier business development team" discussing "brand sales data, sensitive competitive information regarding various suppliers in the alcoholic beverage industry, and RNDC corporate strategy." [DN 107] at *8. RNDC argues that "competitors could use this information to undercut RNDC's business model," and further notes that the document contains "non-public contact information for RNDC employees[.]" [DN 107] at *8.

RNDC has shown good cause to seal each of the above Exhibits, and that the interests of privacy outweigh the public's right to information. RNDC's request is narrowly tailored, as it seeks to seal Exhibits rather than entire motions and the information relevant to the Court's decision will be contained in the Motions and subsequent Order. Accordingly, the Court GRANTS RNDC's Motion for Leave to Seal Exhibits to Sazerac's Motion to Compel, [DN 107].

Sazerac's Motion for Leave to Seal Exhibits to its Response [DN 111]

Sazerac moves to provisionally seal Exhibits B, C, D, and I to its Response to RNDC's Second Motion to Compel Discovery. [DN 111] at *1. Sazerac also moves to permanently seal Exhibits J and K to its Response. [DN 111] at *4.

Exhibits B, C, D, and I had been marked as "Confidential" or "Attorneys' Eyes Only" pursuant to a confidentiality agreement between the parties. [DN 111] at *4. However, Sazerac "takes no position on whether the Court should permanently seal the exhibits," only filing the motion under its obligations pursuant to the parties' confidentiality agreement. [DN 111] at *4. Accordingly, the Court shall GRANT Sazerac's Motion insofar as it seeks to provisionally seal Exhibits B, C, D, and I to its Response to RNDC's Second Motion to Compel Discovery. [DN 111].

Exhibits J and K contain deposition excerpts of Sazerac's Chairman and CEO. [DN 111] at *4. These documents "contain numerous pages reflecting Sazerac's confidential strategic decisions and business strategies" including "agreements with third-party distributors[.]" [DN 111] at *4. Sazerac argues that disclosure "may lead to unfair competition and competitive harm" to itself and third-parties. [DN 111] at *4.

Sazerac has shown good cause to seal Exhibits J and K, and that the interests of privacy outweigh the public's right to information. Sazerac's request is narrowly tailored, as it seeks to seal Exhibits rather than entire motions and the information relevant to the Court's decision will be contained in the Motions and subsequent Order. Accordingly, the Court GRANTS Sazerac's Motion for Leave to Seal Exhibits to its Response to RNDC's Second Motion to Compel, [DN 111].

RNDC's Motion for Leave to Seal Exhibits to its Response [DN 114]

RNDC moves to provisionally seal Exhibit D to its response to Sazerac's Motion to Compel. [DN 114] at *1. Exhibit D had been marked as "Confidential" or "Attorneys' Eyes Only" pursuant to a confidentiality agreement between the parties, and RNDC moves to seal pursuant to that agreement. [DN 114] at *3. Accordingly, the Court shall GRANT RNDC's Motion for provisional sealing, [DN 114], pursuant to Local Rule 5.7.

Sazerac's Motion for Leave to Seal Exhibits to its Reply [DN 117]

Sazerac moves to provisionally seal Exhibits 1, 2, and 3 to its Reply. [DN 117] at *1. Exhibits 1, 2, and 3 to Sazerac's Reply had been marked as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" pursuant to a private confidentiality agreement between the parties. [DN 117] at *3. Sazerac "takes not position on whether the Court should permanently seal the exhibits[.]" Accordingly, the Court shall GRANT Sazerac's Motion for Provisional Sealing, [DN 117], pursuant to Local Rule 5.7.

RNDC's Motion for Leave to Seal Exhibits to its Reply [DN 120]

RNDC moves to provisionally seal Exhibits 1, 2, 3, 4, and 5 of its Reply. [DN 120] at *1. These documents had been produced to RNDC and marked as "Confidential" or "Highly Confidential – Attorney's Eyes Only" pursuant to a private confidentiality agreement. [DN 120] at *3. The producing party for Exhibit 1 is Andrews Distributing. [DN 120] at *4. The producing party for Exhibit 2 is Choice Brands. [DN 120] at *4. The producing party for Exhibit 3 is Faust Distributing. [DN 120] at *4. The producing party for Exhibit 4 is Reyes Holdings. [DN 120] at *5. Finally, the producing party for Exhibit 5 is Sazerac. [DN 120] at *5.

RNDC submits this motion pursuant to their private confidentiality agreements and does not argue for the permanent sealing of these documents. [DN 120]. Accordingly, the Court shall GRANT RNDC's Motion for provisional sealing, [DN 120], pursuant to Local Rule 5.7. Because several of these documents have been marked as confidential by non-parties to the matter, the Court shall also order RNDC to serve upon those parties a copy of this Order and grant them leave to file an intervening motion to seal those documents.

Sazerac's Motion for Leave to Seal Exhibits to RNDC's Response [DN 124]

Sazerac moves to seal Exhibit D to RNDC's Response. [DN 124] at *1. Exhibit D is a distribution agreement between Sazerac and a third party. [DN 124] at *3. The document contains "negotiated terms" and other proprietary business terms that are not known to the public. [DN 124] at *3. Sazerac argues that disclosure of this document "may lead to unfair competition and competitive harm to Sazerac" or the third party competitor of RNDC. [DN 124] at *3.

Sazerac has shown good cause to be seal Exhibit D, and that the interests of privacy outweigh the public's right to information. Sazerac's request is narrowly tailored, as it seeks to seal Exhibits rather than entire motions and the information relevant to the Court's decision will be contained in the Motions and subsequent Order. Accordingly, the Court GRANTS Sazerac's Motion for Leave to Seal Exhibits to RNDC's Response, [DN 124].

RNDC's Motion for Leave to Seal Documents in Sazerac's Response [DN 125]

RNDC moves to seal Exhibits B, C, D, and I to Sazerac's Response. [DN 125] at *1.

Exhibit B is an email chain "discussing RNDC's inventory management procedures and tracking[.]" [DN 125] at *3. The chain references "non-public information" related to RNDC's procedures and process, and RNDC argues that disclosure could harm its interests in "negotiations with potential new suppliers or retailers." [DN 125] at *3–4. Additionally, RNDC notes that the chain includes non-public contact information for employees. [DN 125] at *4.

Exhibit C is an email by RNDC's Executive Vice President which RNDC claims contains "confidential details on how RNDC approaches its business relationships[.]" RNDC argues that disclosure would "undermine [its] internal strategies regarding developing relationships with suppliers. [DN 125] at *4. RNDC further notes that the email contains non-public contact information for RNDC's employees. [DN 125] at *4.

Exhibit D is a copy of RNDC's privilege log. [DN 124] at *4. RNDC argues that such privilege logs "invoke either work-product or attorney-client privilege[,] implicate . . . privacy rights[,] and should be sealed." [DN 124] at *5 (citing *Munson Hardisty, LLC v. Legacy Pointe Apts., LLC*, No. 3:15-cv-547-TAV-CCS, 2017 WL 2350174, at *2 (E.D. Tenn. May 30, 2017)).

Exhibit I includes excerpts from the deposition of RNDC's Chief Operating Officer. [DN 124] at *5. This deposition includes discussion of "marketing, pricing, and volumes of sales over many years." [DN 124] at *5. RNDC argues that publication of this document would allow "competitors to undercut RNDC in terms of how these competitors offer to allocate profits or incentives in their negotiations[,]" or otherwise "decrease [RNDC's] bargaining power."

RNDC has shown good cause to seal Exhibits B, C, and I, and that the interests of privacy outweigh the public's right to information. RNDC's request is narrowly tailored, as it seeks to seal Exhibits rather than entire motions and the information relevant to the Court's decision will be contained in the Motions and subsequent Order. Accordingly, the Court

GRANTS RNDC's Motion for Leave to Seal Exhibits to Sazerac's Response, [DN 107], insofar as the motion seeks to seal Exhibits B and I.

However, RNDC fails to show good cause to seal Exhibit D. Exhibit D, as a privilege log, is intended to create a document which can be viewed by others for the purpose of adjudicating whether documents are properly protected by privilege. Fed. R. Civ. P. 26(b)(5). RNDC does not provide, nor has the Court been able to identify, any case in this Circuit where courts have sealed a privilege log. RNDC's reference to *Munson Hardisty, LLC v. Legacy Pointe Apts., LLC* is inapposite because the *Munson* court was evaluating whether to seal documents for which the attorney-client privilege or work-product doctrine were alleged, not whether the privilege log provided was an attorney work product. *Munson Hardisty*, 2017 WL at *2. Where other courts have assessed whether a privilege log should be sealed, they have refused to do so absent attestations that the privilege log reveals the substance of privileged communications. *See, e.g.*, *Orthopaedic Hospital v. DJO Global, Inc.*, 3:19-cv-00970-JLS-AHG 2020 WL 6074110, at *2 (S.D. Cal. Aug. 21, 2020) ("The parties do not present any argument as to why the information contained in the privilege logs constitute trade secrets . . . [n]or would it be typical for especially sensitive information to appear on a privilege log."). *Jorjani v. New Jersey Institute of Technology*, No. 18-11693 (WJM), 20-1422 (WJM) (CONSOLIDATED), 2022 WL 1811304, at *7 (D.N.J. June 2, 2022); *Blankenship v. Fox News Network, LLC*, 2021 WL 2065409, at *2 (S.D.W.Va. April 13, 2021). Accordingly, the Court shall DENY RNDC's Motion to Seal Exhibits to Sazerac's Response, [DN 107] insofar as the motion seeks to seal Exhibits C and D.

<u>RNDC's Motion for Leave to Seal Documents in Sazerac's Reply [DN 126]</u>

RNDC moves to seal Exhibits 1, 2, and 3 to Sazerac's Reply. [DN 126] at *1.

Exhibit 1 is an email between RNDC executives discussing "RNDC's business strategy following Sazerac's termination of RNDC." [DN 126] at *3. RNDC argues that this document discusses RNDC's "Internal structure of communication for business activities in the event of a supplier termination" and that disclosure could allow competitors to "gain[] an understanding of RNDC's internal strategy as to various initiatives related to supplier terminations[.]" [DN 126] at *3–4. RNDC further notes that the document contains non-public contact information for RNDC employees. [DN 126] at *4.

Exhibit 2 is an email between RNDC sales team members discussing "RNDC's supplier successes after Sazerac's termination" which includes an attachment of "a presentation regarding products and brand success strategies[.]" [DN 126] at *4. RNDC argues that "this non-public information could be leveraged by Sazerac's and RNDC's competitors in future contract negotiations[.]" [DN 126] at *4. RNDC further notes that the document contains non-public contact information for RNDC employees. [DN 126] at *4.

Exhibit 3 is an email chain including RNDC executives and sales team members which discusses "specific brand sales amounts and profits, and . . . sensitive competitive information[.]" [DN 126] at *5. RNDC argues that its competitors "could use this information to undercut RNDC's business model" as it would "grant [competitors] access to RNDC's financial information and sales strategy." [126] at *5. RNDC further notes that the document contains non-public contact information for RNDC employees. [DN 126] at *5.

**Conclusion**

In light of the foregoing, the Court **HEREBY ORDERS**:

1. The Court **GRANTS** Sazerac Company, Inc.'s ("Sazerac") Motion for Leave to Provisionally Seal Exhibits to Motion to Compel, [DN 98].
2. The Court **GRANTS** Republic National Distributing Company, LLC's ("RNDC") Motion for Leave to Provisionally Seal Second Motion to Compel, [DN 100].
3. The Court **GRANTS** Sazerac's Motion for Leave to Seal Exhibits to RNDC's Second Motion to Compel, [DN 106]. However, because Sazerac does not ask to continue sealing Exhibit 10 to RNDC's Second Motion to Compel, the Clerk is directed to file on the public record Exhibit 10 to the RNDC's Second Motion to Compel. (previously filed under seal at [DN 101-1]).
4. The Court **GRANTS** RNDC's Motion for Leave to Seal Exhibits to Sazerac's Motion to Compel, [DN 107].
5. The Court **GRANTS** Sazerac's Motion for Leave to Provisionally Seal Exhibits to its Response, [DN 111].
6. The Court **GRANTS** RNDC's Motion for Leave to Provisionally Seal Exhibits to its Response, [DN 114].
7. The Court **GRANTS** Sazerac's Motion for Leave to Seal Exhibits to its Reply, [DN 117].
8. The Court **GRANTS** RNDC's Motion for Leave to Provisionally Seal Exhibits to its Reply, [DN 120].
9. The Court **GRANTS** and Sazerac's Motion for Leave to Seal Document, [DN 124].
10. The Court **GRANTS IN PART AND DENIES IN PART** RNDC's Motion for Leave to Seal Document [DN 125]. The Clerk is directed to unseal Exhibit D, [DN 112-3], to Sazerac's Response to RNDC's Second Motion to Compel Discovery.
11. The Court **GRANTS** RNDC's Motion for Leave to Seal Documents in Sazerac's Reply [DN 126]
12. Defendant RNDC is **HEREBY ORDERED** to serve on Kentucky Eagle, Inc., Reyes Holdings, LLC., Deloitte Consulting LLP, Andrews Distributing, and Faust Distributing a copy of this Order.
13. The parties to this proceeding, and the non-parties listed in (12) above, are **HEREBY GRANTED** leave to file a Motion to Seal the documents not otherwise put under permanent seal by this Order no more than sixty (60) days from the entry of this order. If no motion is filed by this deadline, the Court will enter an order to unseal those documents.

August 21, 2024

Lanny King, Magistrate Judge
United States District Court