**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLEDIVISION**
**Case No. 3:23-cv-00025-GNS-LLK**

SAZERAC COMPANY, INC.,                                                      PLAINTIFF

v.

REPUBLIC NATIONAL                                                          DEFENDANT
DISTRIBUTING COMPANY, LLC,

**MEMORANDUM OPINION AND ORDER**

This matter has been referred to Magistrate Judge Lanny King to hear and determine all

pretrial matters. Text Order of May 14, 2024, [DN 85]. Before the Court is Plaintiff Sazerac

Company, Inc.'s Motion to Compel. [DN 97] ("Motion"). The Court held a status conference to

address pending discovery disputes on June 17, 2024, but was unsuccessful in resolving the

issues. Order of June 18, 2024, [DN 94]. Accordingly, the parties were granted leave to file the

instant Motion, *id.*, and Republic National Distributing Company, LLC's parallel Second Motion

to Compel, [DN 99]. RNDC filed their Response to the instant Motion, [DN 113], and Sazerac

has filed its Reply, [DN 116]. The Motion being fully briefed and ripe for review, the Court shall

**GRANT IN PART AND DENY IN PART** Sazerac's Motion to Compel. Motion [DN 97].


I.      **Legal Standard**

District courts have broad discretion over docket control and the discovery process. *See*

*In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "It is well established that the scope

of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601,

604 (6th Cir. 1993) (citation omitted). Motions to compel discovery responses are authorized

where a party fails to provide proper responses to requests for production of documents under

Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). The moving party "bears the initial burden of demonstrating relevance of the information or materials requested." *Veritiv Operating Company v. Phoenix Paper Wickliffe, LLC*, NO. 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at *6 (W.D. Ky. April 17, 2023). Once met, the burden shifts to "the party objecting to the motion to compel to show in what respects the discovery requests are improper." *Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-CV-00535-DJH-CHL, 2017 WL 1102698, at *3 (W.D. Ky. March 23, 2017) (citing *Kafele v. Javitch, Block, Eisen & Rathborne*, No. 2:03cv00638, 2005 WL 5095186, at *1 (S.D. Ohio April 20, 2005)).

Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain any "nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). The discovery "need not be admissible evidence to be discoverable." *Id.* This language is broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Veritiv Operating Company*, 2023 WL 2975868, at *6 (internal citations omitted). However, the scope of discovery has limits. "On motion or on its own, the court must limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

## II.   Analysis

Sazarac moves the Court to compel production of approximately 321[1] unredacted documents, as well as updated answers to one of its interrogatories and its initial disclosures. Motion [DN 97] at 10–15. The Court will evaluate each of these requests in turn.

a.   Unredacted Documents [Request for Production Numbers 47 and 55]

Sazarac moves to compel, in unredacted form, documents responsive to its Request for Production numbers 47 and 55. Motion [DN 97] at 3.  Relevant to this request, the parties have expressly agreed to the selective redaction of non-responsive, proprietary information within otherwise responsive documents. *See* ESI Agreement [DN 99-8] at 8 ("To the extent that a responsive document contains … non-responsive Confidential Covered Material (as those terms are used in the Confidentiality Agreement), the Producing Party may produce that document in a redacted form."); Confidentiality Agreement [DN 97-3] at 2 (Confidential Covered Material includes documents "which qualify for protection under Fed. R. Civ. P. 26(c)" as well as extremely sensitive information, "disclosure of which would create a substantial risk of serious competitive harm.") The parties further agreed to "meet and confer in good faith to attempt to resolve any dispute" regarding their use of redactions. *Id.* While this Court has not entered the Agreed ESI Protocol [Proposed] Order, [DN 99-8], it takes notice of the fact that the parties have agreed to its terms, that efforts to resolve disputes involving redactions have failed, and that the Court is able to follow established discovery principles in resolving those disputes.

Request for Production 47 seeks "all documents and communications reflecting, concerning and/or relating to any and all instructions, directions, directives, requirements,

---

[1] Sazarac's Motion seeks 326 documents, [DN 97] at 10, but RNDC has already agreed to fully produce 5 mistakenly redacted documents, [DN 113-1] at 2. If not already produced, RNDC shall do so no later than thirty (30) days from the entry of this Order.

advice, and/or suggestions drafted by RNDC or provided by RNDC to either its employees

(including its sales personnel) or any retailer(s), between January 1, 2021, and the Present,

related to or concerning the replacement of Sazerac products with non-Sazerac products at

retailers (such as 'Sazerac Knockout Brands' documents or charts listing 'Sazerac Product' and

corresponding 'Replacement' non-Sazerac products) or the discontinuation of sales of Sazerac

products." [DN 97-4] at 10-11. Request for Production 55 seeks "[a]ll documents and

communications reflecting, concerning, and/or relating to deprioritizing Sazerac products

compared to products from other suppliers, or otherwise changing prioritization of Sazerac

products, since January 1, 2021 to the present." *Id.* at 20. RNDC produced 626 redacted

documents in response to Sazarac's Request for Production numbers 47 and 55, Motion [DN 97]

at 3 n.1; Response [DN 113] at 8, and Sazarac seeks to compel the unredacted forms of roughly

half those documents.

  Courts in this Circuit have repeatedly held that "unilateral redaction by a producing party

on the basis of relevance is not permitted." *See Carr v. Lake Cumberland Reg'l Hosp., LLC*, No.

6:15-CV-138-DLB-HAI, 2018 WL 11422437, at *2 (E.D. Ky. Feb. 2, 2018) (collecting cases);

*Veritiv Operating Co.*, 2023 WL 2975868, at *13.

  Distinguishable from this authority, the instant case does not deal with unilateral

redaction, but rather a bilateral contract which contemplates redaction of details qualifying for

protection under Fed. R. Civ. P. 26(c). Courts have disallowed redactions for relevance where

the parties' agreements only contemplated redaction for privilege, *Am. Mun. Power, Inc. v. Voith

Hydro, Inc*., No. 2:17-CV-708, 2020 WL 5014914, at *4 (S.D. Ohio Aug. 25, 2020), or only

protected proprietary information through Attorney's Eyes Only ("AEO") designations. *Tween

Brands Inv., LLC v. Bluestar All*., LLC, No. 2:15-CV-2663, 2015 WL 6955177, at *1 (S.D. Ohio

Nov. 10, 2015). Some courts have considered *post hoc* approval of a party's non-responsive

redactions, shielding trade secrets and confidential business information from disclosure.

*Chairez v. AW Distrib., Inc.*, No. 20-CV-1473 (NEB/JFD), 2023 WL 2071375, at \*3 (D. Minn.

Feb. 17, 2023) (requiring redacting party to show "proprietary interest" that would be harmed by

disclosure of the redacted information); *see also In re Remington Arms Co., Inc.,* 952 F.2d 1029,

1032 (8th Cir. 1991) (finding district court abused its discretion by ordering production of

documents containing trade secrets without affording party sufficient opportunity to demonstrate

harm).

      Sazarac cites no authority—caselaw or contractual[2]—for the proposition that, where

agreed protocols allow for more than one production format, RNDC must choose the format

Sazarac prefers. The Court will allow redaction of irrelevant, proprietary information per the

parties' agreement and consistent with established discovery principles.

      Sazarac contends that it is entitled to unredacted documents, under an AEO designation,

because the redacted information is: 1) not relevant to the claims and defenses in this suit; and 2)

not proprietary or competitively sensitive. *See, e.g.,* Reply [DN 116] at 2.

### 1.   *Whether the Redacted Information Appears Relevant*

      As this Court has recognized, relevance is construed broadly, encompassing "any matter

that bears on, or that reasonably could lead to other matter that could bear on any party's claim

or defense." *Veritiv Operating Company*, 2023 WL 2975868, at \*6 (internal citations omitted).

The party resisting production "has the burden to establish that the material either does not come

---

[2] Sazarac makes one passing reference to the ESI Protocol in a footnote: "To the extent that RNDC argues that Sazerac allowed for redactions pursuant to the parties' ESI Protocol, that argument similarly lacks merit once Sazerac raised concerns about RNDC's redactions." Motion [97] at 14 n.5. The Court does not find this logic persuasive.

within the scope of relevance or is of such marginal relevance that the potential harm resulting

from production outweighs the presumption in favor of broad disclosures." *Guiden v. Leatt*

*Corp.*, No. 5:10-CV-175-R, 2013 WL 12234612, at *2 (W.D. Ky. Apr. 30, 2013). "[W]hile the

relevancy standard may be a liberal one, it is not a 'license to go fishing' with the hope that

something might be discovered." *Grayiel v. AIO Holdings, LLC*, No. 315CV00821TBRLLK,

2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017).

RNDC has made redactions on documents it divides into three categories, each with

detailed descriptions of what has been redacted and why it is not relevant. Kendrick Declaration

[DN 113-1] at 3-5. The first category "pertains to 'swap lists' of products that RNDC assessed as

possibilities to replace Sazarac" as well as conversations regarding swap lists. *Id.* at 3. The

redactions themselves only cover "specific supplier names and products" and sometimes "pricing

and sales data for those products." *Id.* The second category pertains to "financial, margin, and/or

sales information regarding specific suppliers other than Sazarac." *Id.* at 4. The third category

pertains to "RNDC's business model and confidential business strategies involving other

suppliers, other distributors, retailers, and specific products." These documents involve

"discussions about other suppliers and products that happen to appear in documents that also

reference relevant information related to Sazarac."  *Id.* at 4-5. In each of the above-described

document categories, RNDC maintains that it has selectively redacted only information that is

both irrelevant and proprietary, without obfuscating other details. Following review of the

various sealed exhibits, *see, e.g.,* Motion [DN 97-14, 16, 17], and as explained in more detail

below, the Court finds that RNDC has fairly described the nature and purpose of its redactions.

Critical to relevance, no additional dates or timing information would be uncovered by

producing unredacted versions of these documents. [DN 113-1] at 6 ("The Redacted Information

does not contain dates or other timing information.") Sazarac's arguments for relevance of the redacted information hinge on the timing of the confidential product, sales, and price data. *See, e.g.,* Motion [DN 97] at 3 (claiming "information relating to *when*" swaps took place should not be redacted or withheld) (emphasis in original), at 12 ("Sazerac has the right to fact check RNDC's assertions and alleged date(s) of swapping out Sazerac products"). Timing is a crucial component to establishing relevance in this case, and Sazarac has not explained how the redacted information is relevant without it containing dates or timing information. *See Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-00024-CHB, 2021 WL 1062553, at *25 (W.D. Ky. Mar. 19, 2021) (court declining to compel production concerning business activity postdating the distributor agreements at issue).

Furthermore, with respect to the first category of "swap list" documents, Sazarac has not explained how supplier names and products, whose selective redaction appears within otherwise unredacted documents, are relevant to the claims and defenses presented in this case. There are certainly allegations that, for example, RNDC "swapped" Sazerac products with "Supplier X" products, but Sazarac has not clarified how specific supplier names and specific products are relevant, other than to "fact check" the timing of alleged swaps. Motion [DN 97] at 12.

Similarly, Sazarac has not shown relevance as to the second and third categories of redacted information. Sazarac points to a number of documents that have been filed under seal. *See* Order on Motions to Seal [DN 127] (granting motions to provisionally seal documents reflecting, for example, "confidential strategic and business information"). The Court has reviewed these exhibits, *see, e.g.,* Motion [DN 97-14, 16, 17], and is not persuaded that the redacted information, and what Sazarac hopes to uncover (*e.g.*, specific supplier names in the context of non-public financial data), has any bearing on relevance. RNDC has provided lengthy

descriptions of both the documents and the type of information that it has redacted, supported by

attorney and RNDC officer declarations. *See* Kendrick Declaration [113-1]; Gonzalez

Declaration [DN 113-7] at 1-4; Response [DN 113] at 13-17. The exhibits Sazarac itself has

submitted to the Court, purportedly demonstrating the redactions' impropriety, corroborates

RNDC's statements.

The redactions at issue are proper only if they cover information that is both irrelevant

and proprietary. Because RNDC has met its burden of showing that the redacted information

does not come within the scope of relevance, the Court will only compel production if RNDC

fails to establish a corresponding proprietary interest. *Chairez*, 2023 WL 2071375, at *4 (D.

Minn. Feb. 17, 2023) (party moving for protection bears the "burden of proving that the

information it has redacted" should be protected, and that its disclosure would harm its

"proprietary interest in the information").

### 2.   *Whether the Redacted Information is Proprietary*

Sazarac contends that RNDC's proprietary label is "dubious," as the redactions cover

terms such as product pricing which can be viewed on retail shelves, Reply [DN 116] at 3 n.2, or

"supplier names and brands," which are also publicly available, Motion [DN 97] at 14. Sazarac

states that RNDC supports its proprietary label "solely by a conclusory argument of counsel (via

declaration)." Reply [DN 116] at 8.[3] Far from conclusory, RNDC's support for the proprietary

designation spans several pages, across different declarations and motion papers, and includes

multiple examples of the type of competitive advantage Sazarac would gain by gaining access to

---

[3] Apart from such limited references, Sazarac does not seem to seriously argue that the redacted information does not contain competitively sensitive or proprietary information; rather, Sazarac insists that because they have largely provided proprietary information under an AEO designation, in unredacted form, RNDC should be compelled to do the same.

these details. Kendrick Declaration [113-1] at 3-5; Gonzalez Declaration [DN 113-7] at 2-4; Response [DN 113] at 13-17. For example, access to the redacted information would allow Sazarac to deduce "non-public pricing, margins, and sales data," "which product RNDC views as Sazarac's biggest competitor," expected profit margins on specific products, and other highly sensitive, proprietary data. Gonzales Declaration [DN 113-7] at 2; *see also* Kendrick Declaration [DN 113-1] at 4 (discussing how disclosure of redacted information, like gross margins, would place RNDC at a competitive disadvantage; "Distributors like RNDC are uniquely positioned in the markets due to their access to pricing information from multiple supplier sources. RNDC does not share supplier-partner pricing or margin information … to remain competitive and fair in the industry.")

The type of information RNDC describes is the sort of proprietary information that courts may protect. *United States ex rel. Scott v. Humana Inc.*, No. 318CV00061GNSCHL, 2021 WL 4449277, at *3, 7 (W.D. Ky. Sept. 28, 2021) (among the records that justify redaction are "sources of business information that might harm a litigant's competitive standing"); *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *5 (W.D. Ky. June 26, 2018) (same); *see also* Fed. R. Civ. P. 26(c)(1)(G)(court has authority to protect "trade secret or other confidential research, development, or commercial information"). The Court finds that RNDC has shown both irrelevance as to, and its proprietary interest in, the redacted information.

### b.  Disputed Claims of Privilege

RNDC claims that 11 documents were redacted on grounds of privilege, [DN 113-1] at 2, and Sazarac states that none of these documents include an attorney anywhere in the communication, Reply [DN 116] at 2 n.1. The Court is unable to locate any of these documents

in RNDC's privilege log and is thus unable to evaluate the claim of privilege. RNDC shall be required to either establish privilege or produce these documents.

### c. Interrogatory 20 and Rule 26(a)(1) Obligations

Sazarac seeks a "complete response" from RNDC regarding its Interrogatory 20, "including the timing of RNDC's actions." Motion [DN 97] at 5. This interrogatory asks RNDC to "describe in detail, including the timing, any and all instructions, directions, directives, requirements, advice, and/or suggestions provided by RNDC to either its employees (including its sales personnel) or any retailer(s), between January 1, 2021 and the present, related to or concerning the replacement of Sazerac products with non-Sazerac products at retailers or the discontinuation of sales of Sazerac products." [DN 97-5] at 7. RNDC responded that they are not aware of any such direction "between January 1, 2021 and December 30, 2022." [DN 97-5] at 8. RNDC further responded that from September 2021 to December 2022, they instructed employees to prioritize Sazarac products. *Id.* Following the respective termination notifications, RNDC leadership directed its employees to continue to prioritize Sazarac products through termination, and employees discussed replacement plans following termination. *Id.* RNDC does not definitively provide the dates on which it did, in fact, follow through with its discussions on replacing Sazarac products. Accordingly, RNDC shall supplement its answer to Interrogatory 20 and provide Sazarac with the date(s) on which it began replacing Sazarac products.

RNDC also does not expressly address Sazarac's claim that they have not fulfilled their Rule 26 (a)(1) obligations. Accordingly, RNDC shall be required to provide Sazarac with the identities of any suppliers that have information relevant to its claims and defenses.

## CONCLUSION AND ORDER

In light of the foregoing, the Court GRANTS IN PART AND DENIES IN PART Sazarac

Company, Inc.'s Motion to Compel, [DN 97], and HEREBY ORDERS that:

1.  Sazarac's Motion to Compel is denied as to Requests for Production numbers 47 and 55,
    except as to the 11 documents that RNDC purportedly withheld for privilege. In
    accordance with this Opinion and Order, RNDC shall supplement its responses no later
    than thirty (30) days from its entry.

2.  Sazarac's Motion to Compel is granted as to Interrogatory 20 and RNDC's Rule 26(a)(1)
    obligations, in accordance with this Opinion and Order, and RNDC shall supplement its
    responses no later than thirty (30) days from its entry.

October 3, 2024

Lanny King, Magistrate Judge
United States District Court